**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:19-cv-07957 |
| v. | ) | |
| | ) | Honorable Jorge L. Alonso |
| THE REGIONAL TRANSPORTATION | ) | |
| AUTHORITY AND ITS COMMUTER RAIL | ) | Magistrate Judge Gabriel A. Fuentes |
| DIVISION, d/b/a METRA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNION PACIFIC'S MEMORANDUM IN OPPOSITION TO
METRA'S MOTION TO DISMISS OR STAY BASED ON PRIMARY JURISDICTION**

Patricia Brown Holmes, Bar # 6194645
Sarah E. Finch, Bar # 6312797
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, IL 60602
Telephone: (312) 471-8745
pholmes@rshc-law.com
sfinch@rshc-law.com

David E. Schoenfeld, Bar #6197020
Benjamin E. Sedrish, Bar #6308141
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., 47th Floor
Chicago, IL 60657
Telephone: (312) 704-7700
dschoenfeld@shb.com
bsedrish@shb.com

Joe Rebein (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
jrebein@shb.com

*Attorneys for Plaintiff Union Pacific Railroad Company*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 2

ARGUMENT ................................................................................................................. 4

I.  The Primary Jurisdiction Doctrine Does Not Apply When Courts Are Asked To Resolve Purely Legal Issues. ................................................................ 4

II. The Parties' Dispute Involves Purely Legal Issues Requiring Application Of This Court's Conventional Competence, Not Technical Or Policy Matters Within The STB's Expertise. ........................................................................... 6

    A.  Determining whether ICCTA creates a common carrier obligation to provide commuter service and preempts other law that might purport to create such an obligation is a function for courts. .................................. 6

        1.  Congress's intent to relieve freight railroads from the burdens of providing common carrier passenger service is clear from ICCTA and legislative history. ................................................................. 7

        2.  This Court should resolve any disputed issues of statutory interpretation without referring the matter to the STB. .................... 10

        3.  This case does not involve whether railroad rates or practices are "reasonable"—issues courts properly refer to the STB. ................. 13

    B.  Determining whether the STB would have jurisdiction over Union Pacific's post-contractual commuter service is a function for courts. ......... 14

III. If The Court Refers This Matter, It Should Ensure A Prompt Resolution. .......... 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Orient Express Ry. v. STB*,
    484 F.3d 554 (D.C. Cir. 2007) ...........................................................................7

*Assoc. of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*,
    2007 WL 2439499 (C.D. Cal. 2007) .................................................................12

*Baker v. IBP*,
    357 F.3d 685 (7th Cir. 2004) ............................................................................16

*Balt. & Ohio Chi. Terminal R.R. v. Wis. Cent. Ltd.*,
    154 F.3d 404 (7th Cir. 1998) ....................................................................4, 5, 11

*Bd. of Educ. of the City Sch. Dist. of the City of N.Y. v. Harris*,
    622 F.2d 599 (2d Cir. 1979) ..............................................................................5

*Chi. Southshore & South Bend R.R. – Petition for Declaratory Order – Common Carrier Obligations*, 1989 WL 247064 (ICC 1989) ...............................................7

*Chlorine Institute, Inc. v. Soo Line Railroad*,
    792 F.3d 903 (8th Cir. 2015) ............................................................................13

*City of Chi. v. United States*,
    396 U.S. 162 (1969) ...........................................................................................8

*City of Chi. v. Purdue Pharma, L.P.*,
    211 F. Supp. 3d 1058 (N.D. Ill. 2016) ............................................................12

*Coastal Distribution, LLC v. Town of Babylon*,
    2009 WL 10706008 (E.D.N.Y. Oct. 9, 2009) ................................................11

*Commuter Rail Div. of the Reg'l Transp. Auth. of N.E. Ill., d/b/a Metra – Exemption – Tariff Filing Requirements*,
    1995 WL 73348 (ICC 1995) ..............................................................................7

*CSX Transp., Inc. v. City of Sebree*,
    2018 WL 2376099 (W.D. Ky. May 24, 2018),
    *aff'd*, 924 F.3d 279 (6th Cir. 2019) ................................................................12

*DeBruce Grain, Inc. v. Union Pacific Railroad*,
    149 F.3d 787 (8th Cir. 1998) ............................................................................13

*DesertXpress Enters., LLC – Petition for Declaratory Order*, 2010 WL 1822102
    (STB 2010) ............................................................................................10, 15, 16

**Page**

*Gross Common Carrier, Inc. v. A.B. Dick Co.*,
    861 F. Supp. 638 (N.D. Ill. 1993) ........................................................17

*Ill. Cent. R.R. v. S. Tec. Dev. Warehouse*,
    1999 WL 519042 (N.D. Ill. July 15, 1999) ...............................................14

*Jones Truck Lines, Inc. v. Williamhouse-Regency, Inc.*,
    1995 WL 453342 (S.D.N.Y. Aug. 1, 1995) ...............................................14

*Louisville & Nashville R.R. v. F.W. Cook Brewing Co.*,
    223 U.S. 70 (1912) .............................................................................4, 10, 14

*Madison County Mass Transit v. Hanfelder*,
    2001 WL 775977 (S.D. Ill. Feb. 7, 2001) ...............................................11

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976) .........................................................................4, 10

*Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*,
    810 F.3d 299 (5th Cir. 2016) ...............................................................17

*Oregon Coast Scenic Railroad, LLC v. Oregon Department of State Lands*,
    841 F.3d 1069 (9th Cir. 2016) ...............................................................15

*Pejepscot Industrial Park v. Maine Central Railroad*,
    215 F.3d 195 (1st Cir. 2000) ...............................................................13

*Port City Props. v. Union Pac. R.R.*,
    518 F.3d 1186 (10th Cir. 2008) ...............................................................16

*Riffin v. STB*,
    733 F.3d 340 (D.C. Cir. 2013) ...............................................................14

*Ryan v. Chemlawn Corp.*,
    935 F.2d 129 (7th Cir. 1991) ..................................................... *passim*

*Santa Cruz Reg'l Transp. Comm'n*
    *– Petition for Declaratory Order*, 2011 WL 3667482 (STB 2011).........................14

*Schiller v. Tower Semiconductor Ltd.*,
    449 F.3d 286 (2d Cir. 2006).............................................................5, 10

*Southern Ry. Co. v. North Carolina*,
    376 U.S. 93 (1964)............................................................................8

*Study of Interstate Commerce Comm'n Regulatory Responsibilities Pursuant to
Section 210(A) of the Trucking Industry Regulatory Reform Act of 1994*,
    1994 WL 639996 (ICC 1994) ...............................................................9

**Page**

*Tex. Cent. Bus. Lines Corp. v. City of Midlothian,*
    669 F.3d 525 (5th Cir. 2012) ........................................................15

*U.S. ex rel. Sheet Metal Workers Int'l Assoc., Local Union 20 v. Horning
    Investments, LLC,*
    828 F.3d 587 (7th Cir. 2016) ........................................................16

*Union Pac. Corp., Union Pac. R.R. & Mo. Pac. R.R. – Control – Chi. & N.W.
    Holdings Corp. & Chi. & N.W. Transp. Co.,*
    1993 WL 48301 (ICC 1993) ...........................................................7

*Union Pac. R.R. v. Chi. Transit Auth.,*
    2009 WL 448897 (N.D. Ill. Feb. 23, 2009) .................................12

*United States v. Elrod,*
    627 F.2d 813 (7th Cir. 1980) ..........................................................5

*United States v. W. Pac. R.R.,*
    352 U.S. 59 (1956)............................................................................4

*Wagner & Brown v. ANR Pipeline Co.,*
    837 F.2d 199 (5th Cir. 1988) ........................................................17

*Wilbert Family Limited Partnership v. Dallas Area Rapid Transit,*
    2012 WL 246091 (N.D. Tex. Jan. 26, 2012) ...............................11

**Statutes**

49 U.S.C. § 13(a) ..............................................................................8

49 U.S.C. § 10102(9) ........................................................................9

49 U.S.C. § 10501 .............................................................................3

49 U.S.C. § 10501(a)(1) ....................................................................9

49 U.S.C. § 10501(a)(2)(A) ...............................................................9

49 U.S.C. § 10501(b)......................................................................9, 16

49 U.S.C. § 10501(c)(2)(A) .............................................................10

49 U.S.C. § 10908 ..........................................................................8, 9

49 U.S.C. § 10909 ..........................................................................8, 9

ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (1995) ....................9

Rail Passenger Service Act of 1970, Pub. L. No. 91-518, 84 Stat. 1327........................8

**<u>Page</u>**

**Other Authorities**

H.R. Rep. No. 104-311 (1995)...........................................................................................................15

H.R. Rep. No. 104-422, at 167 (1996)...............................................................................................10

## INTRODUCTION

This Court has jurisdiction to resolve the only question presented in this case: whether Union Pacific has a common carrier obligation that would require it to operate commuter rail service in the Chicago area after the expiration of its purchase of service agreement ("PSA") with Metra. Metra acknowledges this Court's jurisdiction but attempts to invoke the primary jurisdiction doctrine by asking the Court "to dismiss this case without prejudice, or in the alternative, stay the case pending completion of proceedings before the Surface Transportation Board." ECF 26 at 3. This Court should decline Metra's invitation. The primary jurisdiction doctrine does not apply. Jurisdiction lies with this Court and the Court should decide the issue.

The Court should deny Metra's motion because the parties' dispute involves strictly legal matters within the conventional experience of federal judges—not policy or technical considerations within the special competence of the Surface Transportation Board ("STB"). Additionally, Metra provides no grounds for the extraordinary relief requested. The primary jurisdiction doctrine allows courts, under appropriate circumstances, to refer matters to administrative agencies or to defer to ongoing administrative proceedings. Those circumstances are not present here.

Moreover, Metra nowhere actually asks this Court to refer the matter to the STB. Nor does Metra identify a related case now pending at the STB—none exists to Union Pacific's knowledge—or state that it intends to initiate such an action. Consequently, Metra's motion, if granted, would leave the parties exactly where they stood before Union Pacific sought relief from the Court last year—with no prospect for resolution of the important public interest question presented.

Union Pacific and Metra both have advised this Court that resolution of their common carrier dispute will require only limited fact discovery and no expert testimony. ECF 22 & 42.

Both parties also have recognized the public interest implicated and the need to avoid interruption of Chicago-area commuter service, which has been provided under repeat short-term extensions of the PSA since Jan. 1, 2020. *See* ECF 7 at 2, n.1. That is no way to manage a critical public service. Judicial economy and the public interest would be better served by this Court exercising its acknowledged jurisdiction to resolve the common carrier issue. Accordingly, this Court should deny Metra's motion.

## BACKGROUND

Union Pacific is an interstate freight railroad. ECF 1 (Complaint) ¶ 2. It does not hold itself out as offering passenger service, and it is not a passenger railroad. *Id.* ¶ 33. Metra offers commuter service on 11 lines in the Chicago area, including three lines operated over tracks owned by Union Pacific. *Id.* ¶ 19. Metra directly operates the commuter service on most of its lines. *Id.* On Metra's three lines operating over Union Pacific's tracks, Union Pacific operates the commuter service on Metra's behalf under the parties' contract, which is known as the PSA. *Id.*

Since 2019, Union Pacific and Metra have been engaged in negotiations to ensure the continued operation of commuter service on Union Pacific's railroad after the PSA's expiration, which is currently set for June 30, 2020. *Id.* ¶ 4.[1] Union Pacific has advised Metra that it intends to exit the business of operating commuter service on Metra's behalf and has asked to work with Metra to ensure the seamless transition of the commuter service on its tracks to Metra. *Id.* Union Pacific does not operate commuter service anywhere else on its 23-state, 32,000-mile freight railroad. *Id.* Union Pacific has offered to make its tracks, other property and specific essential services (such as train dispatching and track maintenance) available to Metra under a new

---

[1] The parties are currently in the process of negotiating a further PSA extension to August 31, 2020.

contract, so that Metra can continue to provide the commuter service directly, as it does on most of its lines, with no difference to riders. *Id.*

Negotiations so far have been unsuccessful. The PSA initially was set to expire on December 31, 2019. *Id.* That deadline precipitated this lawsuit. Since last year, to allow for the continued provision of Chicago-area commuter service on Union Pacific tracks, Union Pacific and Metra have entered into a series of short-term extensions of the PSA to provide additional time to reach a new agreement that meets both sides' needs. *See, e.g.*, *id.* ¶ 5.

During negotiations, Metra has contended that, if the PSA were to expire without the parties reaching a new agreement, Union Pacific would be subject to a common carrier obligation to continue operating commuter service on the tracks currently used by Metra—*i.e.*, Union Pacific has no choice but to renew the PSA under Metra's terms because Union Pacific, according to Metra, cannot exit the business of operating the commuter service as a matter of law. *Id.* ¶ 6. Metra's insistence on this point has raised a substantial controversy, which is now before this Court.

Union Pacific did not file this lawsuit lightly. Union Pacific only sought relief from this Court when it became clear that the parties' fundamental disagreement over Union Pacific's legal obligations would not be resolved between the parties. Given the critical public interest involved in the commuter service, Union Pacific also believed the question should not be indefinitely deferred or left to chance. There is no question that Congress granted the STB broad and exclusive jurisdiction over many aspects of rail transportation in the United States. 49 U.S.C. § 10501. But Congress did not displace the basic role of courts in interpreting statutes in disputes involving purely legal issues. Metra agrees that the Court has jurisdiction to determine whether

3

Union Pacific has a common carrier obligation to operate commuter service after expiration of the PSA. Union Pacific is asking the Court to exercise that jurisdiction now.

## ARGUMENT

### I.    The Primary Jurisdiction Doctrine Does Not Apply When Courts Are Asked To Resolve Purely Legal Issues.

"The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and agencies charged with particular regulatory duties." *Ryan v. Chemlawn Corp.*, 935 F.2d 129, 131 (7th Cir. 1991). It applies when a court must resolve "issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id.* (quoting *United States v. W. Pac. R.R.*, 352 U.S. 59, 64 (1956)). Courts apply the doctrine "when an action otherwise within the jurisdiction of the court raises a question of the validity of a rate or practice filed with an agency." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 305 (1976). Courts also apply the doctrine "with regard to issues of tariff interpretation involving highly technical matters central to the agency's mission and expertise." *Balt. & Ohio Chi. Terminal R.R. v. Wis. Cent. Ltd.*, 154 F.3d 404, 411 (7th Cir. 1998). In such cases, referral of issues to an agency can promote "uniformity in regulation" and application of "technical expertise" by giving the court the benefit of the agency's "specialized knowledge." *Nader*, 426 U.S. at 305 (quoting *Western Pac.*, 352 U.S. at 64).

The doctrine of primary jurisdiction does not extend to cases raising pure issues of law, notwithstanding their connection to a regulatory scheme. *See Louisville & Nashville R.R. v. F.W. Cook Brewing Co.*, 223 U.S. 70, 84 (1912); *Nader*, 426 U.S. at 305–06; *Balt. & Ohio*, 154 F.3d at 411. In such cases, the applicable standards "are within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful." *Nader*, 426 U.S. at 305–06. The Seventh Circuit has emphasized the doctrine's limited scope. In *Balt. &*

*Ohio*, for example, the court explained that a dispute whether charges in a railroad interchange agreement were lawful even though the agreement had not been filed with the STB was "an issue of law rather than a matter within the special expertise of the STB, and therefore it did not have to be referred to the agency." 154 F.3d at 411; *see also id.* ("The particular issue in controversy here, however, is neither one of tariff interpretation nor one of the reasonableness of the tariff."); *United States v. Elrod*, 627 F.2d 813, 818 (7th Cir. 1980) (referral not appropriate "'where the issue, regardless of its complexity, is not the reasonableness of a rate or rule, but a violation of such rate or rule'" (quoting *Civil Aeronautics Bd. v. Modern Air Transp.*, 179 F.2d 622, 624 (2d Cir. 1950)). Other courts follow the Seventh Circuit in emphasizing that referral is inappropriate where an issue "requires [courts] to engage in an activity—statutory interpretation—that is the daily fare of federal judges." *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 295 (2d Cir. 2006) (citing *Baltimore & Ohio*); *see also, e.g.*, *Bd. of Educ. of the City Sch. Dist. of the City of N.Y. v. Harris*, 622 F.2d 599, 607 (2d Cir. 1979) ("[C]ourts need not defer to an agency where the issue involved is a strictly legal one, involving neither the agency's particular expertise nor its fact finding prowess.").

The Seventh Circuit also has emphasized that referral is inappropriate where it would not serve "judicial economy." *Ryan*, 935 F.2d at 131. As the court explained, where Congress has placed an issue within an administrative agency's special competence, "primary jurisdiction serves judicial economy because the dispute may be decided within the agency, thus obviating the need for courts to intervene." *Id*. Where a dispute presents purely legal issues, however, "judicial economy will be better served" by allowing the case to proceed in court. *Id.* at 132; *see also id*. (district court "could have asked the [agency] to file an amicus brief").

II.     **The Parties' Dispute Involves Purely Legal Issues Requiring Application Of This Court's Conventional Competence, Not Technical Or Policy Matters Within The STB's Expertise.**

The controversy between Union Pacific and Metra involves purely legal issues of statutory interpretation. Union Pacific contends Congress's enactment of the ICC Termination Act ("ICCTA") eliminated any federal common carrier obligation to provide passenger service and preempts any common carrier obligations based on state or local law. Metra disagrees and contends the common carrier obligation would require Union Pacific to operate commuter service on its tracks after expiration of the PSA. Deciding whether Union Pacific would have *any* legal obligation to operate the commuter service is a purely legal matter within the conventional competence of this Court, not a technical or policy matter "'placed within the special competence'" of the STB. *Ryan*, 935 F.2d at 131 (quoting *Western Pacific*, 352 U.S. at 64).

Metra argues that this case may raise an additional issue: whether Union Pacific's post-PSA compulsory commuter service would fall within the STB's jurisdiction. ECF 27 at 14–16. But determining the STB's jurisdiction also is a matter of statutory interpretation squarely within the conventional competence of judges. Moreover, if the STB were to conclude that it lacked jurisdiction, the STB simply would return the dispute to this Court without resolving the controversy, leaving all concerned back exactly where they started. Such a detour would not "serve judicial economy" (*Ryan*, 935 F.2d. at 131) or the public interest.

A.     **Determining whether ICCTA creates a common carrier obligation to provide commuter service and preempts other law that might purport to create such an obligation is a function for courts.**

No special administrative expertise is needed to conclude that Congress's enactment of ICCTA eliminated any obligation of federally regulated railroads to provide common carrier passenger service and preempted state and local authorities from imposing such requirements.

6

This Court is fully within its authority to determine Congress's intent by interpreting ICCTA, legislative history and relevant precedent.

> **1.    Congress's intent to relieve freight railroads from the burdens of providing common carrier passenger service is clear from ICCTA and legislative history.**

Federally regulated freight railroads are not required to provide passenger service. The STB and its predecessor agency, the Interstate Commerce Commission ("ICC"), have historically "treat[ed] freight and passenger operations as severable." *Chi. Southshore & South Bend R.R. – Petition for Declaratory Order – Common Carrier Obligations*, 1989 WL 247064, at \*3 (ICC 1989). Even before Congress passed ICCTA, the ICC would grant railroads authority to provide freight service, but would "not impose a requirement to provide passenger service," when carriers would "specifically seek to limit their common carrier obligation to freight transportation only." *Id.* As courts have explained, a railroad assumes the obligations of a common carrier of passengers only if it "holds itself out to the general public as engaged in the business of transporting persons." *Am. Orient Express Ry. v. STB*, 484 F.3d 554, 557 (D.C. Cir. 2007) (internal quotation omitted).

The ICC previously found Chicago & North Western Railway Company ("CNW"), which operated the commuter service at issue for Metra before merging with Union Pacific,[2] did not hold itself out to provide commuter service. In 1994, Metra asked the ICC to exempt the commuter services it provided directly and those provided by CNW under contract to Metra from the ICC's tariff filing requirements. *See Commuter Rail Div. of the Reg'l Transp. Auth. of N.E. Ill., d/b/a Metra – Exemption – Tariff Filing Requirements*, 1995 WL 73348 (ICC 1995). The

---

[2] *See Union Pac. Corp., Union Pac. R.R. & Mo. Pac. R.R. – Control – Chi. & N.W. Holdings Corp. & Chi. & N.W. Transp. Co.*, 1993 WL 48301, at \*2 (ICC 1993).

ICC exempted Metra from the requirements, but it concluded CNW did not need an exemption,
because CNW did not hold itself out to provide the commuter service:

> METRA appears to be the only entity here that could benefit from
> the requested exemption because only METRA holds itself out to
> provide the commuter service at issue. While the METRA route
> literature . . . reveals the names of various interstate carriers
> providing service under contract to METRA, it does not appear
> that any of them actually hold out to provide the service in their
> own name or in any capacity other than as a contractor to METRA.
> Even CNW's operation of the Kenosha commuter line is on
> METRA's behalf as it is METRA that holds itself out to provide
> the service. Thus, we find it is METRA, and not the contracting
> carriers, that is properly subject to our tariff filing obligation for
> the commuter services being provided.

*Id.* at *2.

Before 1958, the ICC could authorize a railroad to discontinue all its service on a line but
"lacked power to discontinue particular trains or services while leaving the remaining services in
operation." *Southern Ry. Co. v. North Carolina*, 376 U.S. 93, 101 (1964). Instead, railroads
needed state regulators' approval to discontinue passenger service—approval the regulators were
often unwilling to grant. *See City of Chi. v. United States*, 396 U.S. 162, 164–65 (1969). In 1958,
"concerned with the problems posed by passenger services . . . which were consistently deficit-
producing, thus forcing the carriers to subsidize their operations out of freight profits," Congress
granted the ICC authority to discontinue interstate *and* intrastate trains. *Southern Ry.*, 376 U.S. at
101. This discontinuance authority was initially codified at 49 U.S.C. § 13(a), and later re-
codified at 49 U.S.C. § 10908 (interstate service) and § 10909 (intrastate service).

Congress took a second major step to reduce railroads' obligations to provide passenger
service by enacting the Rail Passenger Service Act of 1970 ("RSPA"), Pub. L. No. 91-518, 84
Stat. 1327. Under RSPA, by contracting with the National Railroad Passenger Corporation
(Amtrak), a railroad could eliminate its obligations to provide "intercity rail passenger service,"

§ 401(a)(1), 84 Stat. 1334—that is, passenger transportation "except commuter and other short-haul service in metropolitan and suburban areas," § 102(5), 84 Stat. 1328.

In 1995, Congress eliminated whatever remained of railroads' historical obligation to provide passenger service in ICCTA. ICCTA was a major piece of deregulatory legislation that abolished the ICC and transferred a reduced set of regulatory functions to the STB. *See* Pub. L. No. 104-88, 109 Stat. 803 (1995). In passing ICCTA, Congress fully eliminated the former passenger common carrier obligation by repealing 49 U.S.C. § 10908 and § 10909. With the repeal, railroads immediately could exit any passenger service without seeking agency authorization. The repeal was not an accident or oversight. Congress followed the ICC's recommendation to "[e]liminate regulation of route discontinuances by non-Amtrak carriers." *Study of Interstate Commerce Comm'n Regulatory Responsibilities Pursuant to Section 210(A) of the Trucking Industry Regulatory Reform Act of 1994*, 1994 WL 639996, at *41 (ICC 1994). By eliminating the legal barriers to exit, Congress removed any obligation railroads once had to provide common carrier passenger service.

At the same time, by granting the STB broad and exclusive jurisdiction over rail transportation, Congress acted to ensure that states and local governments could not step in and reregulate railroad passenger service. It granted the STB jurisdiction over "transportation by rail carrier," 49 U.S.C. § 10501(a)(1), between "a State and a place in the same or another State as part of the interstate network," *id.* § 10501(a)(2)(A). It defined "transportation" to include property and services related to "movement of passengers." *Id.* § 10102(9). Congress also made the STB's jurisdiction "exclusive." *Id.* § 10501(b). In short, Congress ensured that only the STB could regulate passenger transportation within its jurisdiction, while at the same time, "regulation

9

of passenger transportation [was] generally eliminated." H.R. Rep. No. 104-422, at 167 (1996).[3] It is against this clear statutory backdrop—the unambiguous combination of congressional decisions both to eliminate the common carrier obligation for passenger service and to provide for exclusive federal jurisdiction—that Metra's motion should be evaluated.

### 2. This Court should resolve any disputed issues of statutory interpretation without referring the matter to the STB.

Importantly, this Court need not resolve the merits of either party's position on the common carrier question in order to deny Metra's motion. It only needs to recognize that the parties' dispute involves pure legal issues of statutory interpretation—"the daily fare of federal judges." *Schiller*, 449 F.3d at 295. Deciding whether Union Pacific would be obligated to continue to operate the commuter service in the event the PSA expired does not require the Court to determine any issue Congress placed "'within the special competence of an administrative body.'" *Ryan*, 935 F.2d at 131 (quoting *Western Pac.*, 352 U.S. at 64). The answer "does not turn on a determination of reasonableness . . . that could be facilitated by an informed evaluation of the economics or technology of the regulated industry." *Nader*, 426 U.S. at 306. The dispute here involves purely legal questions within "the conventional competence of the courts." *Id.*

When asked to invoke primary jurisdiction, courts take care to distinguish between cases presenting legal questions within their experience and cases presenting administrative questions properly referred to the STB (or its predecessor, the ICC). For example, in *Louisville & Nashville Railroad*, where a railroad refused to carry beer moving across state lines to comply with certain

---

[3] Congress generally excluded from the STB's jurisdiction "public transportation provided by a local government authority," but established limited exceptions. 49 U.S.C. § 10501(c)(2)(A). Rail carriers other than local government authorities still must obtain authorization from the STB to provide passenger service "as part of the interstate network." *See, e.g.*, *DesertXpress Enters., LLC – Petition for Declaratory Order*, 2010 WL 1822102, at *7 (STB 2010).

local laws, the Supreme Court rejected arguments that the shipper should have challenged the refusal at the ICC. It explained the matter "must turn not upon any administrative question or questions of fact within the scope of power of the Commission, but rather the validity of the legislation," which presented "a question of general law, for a judicial tribunal." 223 U.S. at 84. Similarly, the Seventh Circuit emphasized in *Baltimore & Ohio* that disputes touching on issues under the STB's jurisdiction may nonetheless present "an issue of law rather than a matter within the special expertise of the STB." 154 F.3d at 411. The point is well illustrated by *Madison County Mass Transit v. Hanfelder*, 2001 WL 775977 (S.D. Ill. Feb. 7, 2001), where the court declined to refer questions about whether a line was "railbanked" and thus within the STB's exclusive jurisdiction, or abandoned, and thus outside the STB's jurisdiction. The court acknowledged the STB's exclusive power to regulate abandonments, *see id.* at *1, but found referral was inappropriate because the dispute involved only whether actions complied with certain statutory and regulatory obligations, not their "reasonableness," *id.* at *4; *see also Coastal Distribution, LLC v. Town of Babylon*, 2009 WL 10706008, at *3 (E.D.N.Y. Oct. 9, 2009) (declining referral to STB because dispute whether Clean Railroads Act precluded application of zoning regulations to rail transload facility "is a matter of statutory interpretation, a function routinely performed by the courts").

Courts apply the same principles in rejecting referral of legal issues involving application of the common carrier obligation. For example, in *Wilbert Family Limited Partnership v. Dallas Area Rapid Transit*, 2012 WL 246091 (N.D. Tex. Jan. 26, 2012), the court said it would decide whether STB regulations exempted certain products from the common carrier requirement. The court explained such "[l]egal issues need not be referred to agencies," because they "'involv[e] neither the agency's particular expertise nor its fact finding prowess; the standards to be applied

11

in resolving the issue are within the conventional competence of the courts and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of the case.'" *Id.* at \*5 (quoting *Columbia Gas Transmission Corp. v. Allied Chem. Corp.*, 652 F.2d 503, 319 n.15 (5th Cir. 1981)).

This Court recognized the importance of focusing on the legal issue actually presented by a case, rather than the broader regulatory background, in *City of Chicago v. Purdue Pharma, L.P.*, 211 F. Supp. 3d 1058 (N.D. Ill. 2016). The Court declined to invoke primary jurisdiction because it was not being asked to decide whether a particular medical treatment was appropriate—an issue within the technical expertise of the Food and Drug Administration—but whether particular marketing practices were unlawful. *See id.* at 1065. As this Court explained, "Courts are equipped to adjudicate such claims." *Id.* (internal quotation omitted).

Finally, to the extent Metra were to contend that ICCTA would not preempt state or local laws purportedly creating a common carrier obligation for Union Pacific to provide commuter service, federal courts routinely resolve disputes regarding ICCTA's preemptive effect without referring the issue to the STB. *See, e.g.*, *CSX Transp., Inc. v. City of Sebree*, 2018 WL 2376099 (W.D. Ky. May 24, 2018) (ICCTA preempts local ordinance requiring approval for certain rail maintenance or construction projects), *aff'd*, 924 F.3d 279 (6th Cir. 2019); *Union Pac. R.R. v. Chi. Transit Auth.*, 2009 WL 448897 (N.D. Ill. Feb. 23, 2009) (ICCTA preempts state law condemnation of actively used railroad property), *aff'd*, 647 F.3d 675 (7th Cir. 2011); *Assoc. of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 2007 WL 2439499 (C.D. Cal. 2007) (ICCTA preempts rules enacted by air quality management district), *aff'd*, 622 F.3d 1094 (9th Cir. 2010).

### 3. This case does not involve whether railroad rates or practices are "reasonable."

The cases Metra cites reinforce the distinction between a court's conventional role in deciding purely legal issues and the STB's policy-making role in deciding whether railroad rates and practices are "reasonable." ECF 27 at 9–11. In *DeBruce Grain, Inc. v. Union Pacific Railroad*, 149 F.3d 787 (8th Cir. 1998), the court stated: "The basic question presented by the complaint in this case is whether UPR's response to DeBruce's request for cars was *reasonable*." *Id*. at 789 (emphasis provided). The court further explained: "DeBruce's claims require not only legal analysis, but also an informed evaluation of the economics or technology of the regulated industry." *Id.* Those kinds of questions are not present here.

Similarly, in *Pejepscot Industrial Park v. Maine Central Railroad*, 215 F.3d 195 (1st Cir. 2000), the court held referral to the STB was appropriate because "the STB's expertise [was] clearly involved in the question of whether [the railroad's] actions constitute unlawful refusal to 'provide service on *reasonable request*.'" *Id.* at 205 (quoting 49 U.S.C. § 11101(a), emphasis provided). As the court explained, "referral to the STB will promote uniformity in the standards governing refusals to provide service." *Id.* at 206 (*citing DeBruce*). Again, the controversy presented in this case raises no such matters.

Likewise, in *Chlorine Institute, Inc. v. Soo Line Railroad*, 792 F.3d 903 (8th Cir. 2015), the court held referral was appropriate because the case involved "the reasonableness" of a rail tariff requiring that certain hazardous materials be shipped in normalized steel rail cars – a safety requirement that went beyond Department of Transportation regulations – and the STB was "best equipped to determine if such additional requirements are '*reasonable*.'" *Id*. at 912 (emphasis provided). The court explained: "[T]he STB, with its expertise in the industry, is better equipped than federal courts to address fact-intensive questions of whether a particular safety requirement

beyond the regulations is consistent with the regulations and national policy." *Id.* Significantly, the court recognized referral would have been unnecessary if the issue were purely legal. It considered referral only after concluding the challenged requirements were "not barred as a matter of law." *Id.* at 911. It also distinguished *Louisville & Nashville* as a case not requiring referral because the Court "was merely analyzing the legal question of whether a railroad could outright refuse (not reasonably limit) its transportation obligations." *Id.*[4]

### B. Determining whether the STB would have jurisdiction over Union Pacific's post-contractual commuter service is a function for courts.

Metra claims it is uncertain whether the compulsory post-PSA commuter service obligation to be imposed on Union Pacific would fall within the STB's jurisdiction over transportation between "a State and a place in the same or another State as part of the interstate rail network." ECF 27 at 14–16 (citing 49 U.S.C. § 10501(a)(2)(A)). There is no uncertainty on this point. The STB has jurisdiction over any interstate and intrastate passenger transportation provided by federally regulated interstate freight railroads. The ICC had such jurisdiction before Congress enacted ICCTA. Congress expressly authorized the ICC to exercise that jurisdiction when it empowered the agency to discontinue freight railroads' interstate and intrastate passenger service. In ICCTA, Congress modified the statutory provisions governing the agency's jurisdiction, but it made the changes to "clarif[y] and expand[] the scope of the agency's

---

[4] The additional cases Metra cites on page 11 of its Memorandum also fail to show a court should refer legal matters to the STB. *See Jones Truck Lines, Inc. v. Williamhouse-Regency, Inc.*, 1995 WL 453342 (S.D.N.Y. Aug. 1, 1995) (referring claims about reasonableness of rates and practices and classification of transportation as contract or common carriage); *Riffin v. STB*, 733 F.3d 340 (D.C. Cir. 2013) (affirming STB regarding the scope of the common carrier requirement in case filed at STB); *Ill. Cent. R.R. v. S. Tec. Dev. Warehouse*, 1999 WL 519042 (N.D. Ill. July 15, 1999) (referring claims about reasonableness of demurrage tariff, but not legal question whether boxcars were exempted from demurrage charges); *Santa Cruz Reg'l Transp. Comm'n – Petition for Declaratory Order*, 2011 WL 3667482 (STB 2011) (addressing whether STB would have authority over a proposed line acquisition).

jurisdiction over *intrastate* rail transportation." *DesertXpress Enters., LLC – Petition for Declaratory Order*, 2010 WL 1822102, at \*7 (STB 2010) (emphasis in original); *see also* H.R. Rep. No. 104-311 at 95 (1995) ("[C]hanges are made to reflect the direct and complete preemption of State economic regulation of railroads."). Under ICCTA, the agency's jurisdiction over passenger service provided by federally regulated interstate freight railroads is no longer shared with states. It is *exclusive*.

Metra claims STB cases show a need for agency expertise to determine whether intrastate passenger transportation is provided "as part of the interstate rail network." ECF 27 at 16–19. However, the cases Metra cites all involve service provided by *passenger-only railroads* on *passenger-only rail lines*. *See* ECF 27 at 15–16. Here, the dispute involves compulsory commuter service to be operated by Union Pacific—an interstate *freight* railroad—on tracks used to transport interstate *freight*. *See* ECF 1 ¶¶ 2, 3. This service would have been within the ICC's pre-ICCTA jurisdiction over discontinuances. It is plainly within the STB's expanded post-ICCTA jurisdiction.

In any event, courts routinely resolve questions about the STB's jurisdiction without resort to the primary jurisdiction doctrine. In *Oregon Coast Scenic Railroad, LLC v. Oregon Department of State Lands*, 841 F.3d 1069 (9th Cir. 2016), the Ninth Circuit interpreted the same statutory language Metra discusses to hold a passenger railroad's repairs in one state of track owned by a freight railroad that was once connected to the interstate network and could potentially be reconnected were done "as part of the interstate rail network" and subject to STB jurisdiction. *Id.* at 1075. Courts regularly interpret other provisions of ICCTA to resolve purely legal questions about the STB's jurisdiction. *See, e.g., Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 530–32 (5th Cir. 2012) (affirming district court's conclusion that a

transloading operation was "transportation by rail carrier" under § 10501(b)); *Port City Props. v. Union Pac. R.R.*, 518 F.3d 1186, 1188–89 (10th Cir. 2008) (affirming district court's conclusion that certain track is subject to STB jurisdiction under § 10501(b)).

Finally, the STB in *DesertXpress* already provided its views on the jurisdictional issue Metra raises. Where an agency has expressed its views on a disputed matter, no justification exists for invoking primary jurisdiction. *See, e.g.*, *Western Pac.*, 352 U.S. at 69 ("Certainly there would be no need to refer the matter of construction to the Commission if that body, in prior releases or opinions, has already construed the particular tariff at issue or has clarified the factors underlying it."). In these circumstances, referral merely would delay the court's resolution of a matter; it would not "serve[] judicial economy." *Ryan*, 935 F.2d at 131.

## III.     If The Court Refers This Matter, It Should Ensure A Prompt Resolution.

The Court should decline Metra's invitation to invoke the primary jurisdiction doctrine. However, in the event the Court were to grant Metra's motion, it should stay this action, not dismiss it. Where a court refers a matter to an agency under a primary jurisdiction theory, a stay, not dismissal, is the proper procedural outcome. *See, e.g.*, *U.S. ex rel. Sheet Metal Workers Int'l Assoc., Local Union 20 v. Horning Investments, LLC*, 828 F.3d 587, 592 (7th Cir. 2016) (primary jurisdiction is "a permissive doctrine" under which "a federal court may stay the proceeding to allow the agency to take the first look at the case"); *Baker v. IBP*, 357 F.3d 685, 688 (7th Cir. 2004) ("[T]he doctrine of primary jurisdiction is implemented by abstention—which means by staying rather than dismissing the litigation.").

Here, the parties are scheduled to complete discovery by August 21, 2020 (ECF 43)—at which point the case should be ready for merits resolution. A stay would allow them to pick up the litigation immediately should the STB fail to decide the common carrier issue or fail to do so within a reasonable time. Dismissing the case, on the other hand, would require starting all over

again, with Union Pacific re-filing its complaint, re-serving it and awaiting Metra's responsive pleading.

Should the Court refer the matter to the STB, Union Pacific requests that it impose a deadline by which the STB should rule, with the understanding that the Court will decide the issue itself if the STB does not rule within that period. Courts in a number of circuits, including in the Seventh Circuit, have adopted this kind of approach. In *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199 (5th Cir. 1988), for example, the Fifth Circuit issued the following order:

> To ensure that [plaintiff's] rights will not be unreasonably delayed or lost, we direct that the district court modify its judgment by vacating its order of dismissal and substituting an order staying proceedings before it for a period of 180 days . . . . If no such ruling is forthcoming within that time . . . then the district court should proceed to adjudicate the rights of the parties without further deference to the expertise of FERC.

*Id.* at 206; *see also Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299, 313 (5th Cir. 2016) (directing district court to enter an order staying proceedings 180 days to allow FERC to rule); *Gross Common Carrier, Inc. v. A.B. Dick Co.*, 861 F. Supp. 638, 641 (N.D. Ill. 1993) (staying case 90 days to allow defendant to obtain ruling from ICC). The legal question presented here is neither fact-intensive nor an expert subject matter. ECF 22 & 42. Therefore, Union Pacific requests that, if the Court does refer the matter to the STB, it do so for only 90 days, with the Court proceeding to consider the common carrier question itself, if the STB does not rule within that time.

## <u>CONCLUSION</u>

Union Pacific requests that the Court deny Metra's motion or, in the alternative, stay this matter 90 days to allow the STB to rule on the common carrier question, with the understanding that the Court will decide this matter without the STB's guidance if the agency fails to issue a ruling within that time.

Dated: June 11, 2020               Respectfully submitted,

/s/ *Patricia Brown Holmes*

Patricia Brown Holmes, Bar # 6194645
Sarah E. Finch, Bar # 6312797
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, IL 60602
Telephone: (312) 471-8745
pholmes@rshc-law.com
sfinch@rshc-law.com

David E. Schoenfeld, Bar #6197020
Benjamin E. Sedrish, Bar #6308141
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., 47th Floor
Chicago, IL 60657
Telephone: (312) 704-7700
dschoenfeld@shb.com
bsedrish@shb.com

Joe Rebein (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: (816) 474-6550
jrebein@shb.com

*Attorneys for Plaintiff*
*Union Pacific Railroad Company*

## <u>CERTIFICATE OF SERVICE</u>

I, Patricia Brown Holmes, certify that on June 11, 2020, I caused a copy of the forging document to be filed electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

<u>*/s/ Patricia Brown Holmes*</u>
Patricia Brown Holmes