**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNION PACIFIC RAILROAD COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:19-cv-07957 |
| v. | ) | |
| | ) | Honorable Jorge L. Alonso |
| THE REGIONAL TRANSPORTATION | ) | |
| AUTHORITY AND ITS COMMUTER RAIL | ) | Magistrate Judge Gabriel A. Fuentes |
| DIVISION, d/b/a METRA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNION PACIFIC'S OPPOSITION TO**
**METRA'S MOTION FOR LEAVE TO FILE COUNTERCLAIM**

Patricia Brown Holmes, Bar # 6194645
Sarah E. Finch, Bar # 6312797
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, IL 60602
Telephone: (312) 471-8745
pholmes@rshc-law.com
sfinch@rshc-law.com

David E. Schoenfeld, Bar # 6197020
Erika A. Dirk, Bar # 6329612
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., 47th Floor
Chicago, IL  60657
Telephone: (312) 704-7700
dschoenfeld@shb.com
eadirk@shb.com

Joe Rebein (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
Telephone: (816) 474-6550
jrebein@shb.com

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION ...............................................................................................................1

BACKGROUND ................................................................................................................1

LEGAL STANDARD..........................................................................................................4

ARGUMENT ....................................................................................................................4

I. Metra's Proposed Counterclaim Is Compulsory And Was Waived. ..................................4

II. Metra's Counterclaim Was Mature When It Filed Its Answer. ..........................................5

III. The Court Should Deny Leave To Amend. .................................................................7

  A. Metra Has No Excuse For Its Undue Delay.........................................................7

  B. Allowing The Untimely Counterclaim Would Be Prejudicial.............................9

CONCLUSION................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aldridge v. Forest River, Inc.*,
    635 F.3d 870 (7th Cir. 2011) ................................................4

*Am. Family Mut. Ins. Co. v. Kirby*,
    No. 2:15-CV-301-JVB-JEM, 2018 WL 345765 (N.D. Ind. Jan. 8, 2018)................9

*APC Filtration, Inc. v. Becker*,
    No. 07-CV-1462, 2009 WL 187912 (N.D. Ill. Jan. 26, 2009).............................7, 8

*Burlington N. R. Co. v. Strong*,
    907 F.2d 707 (7th Cir. 1990) ................................................4

*Campania Mgmt. Co. v. Rooks, Pitts & Poust*,
    290 F.3d 843 (7th Cir. 2002) ................................................7, 8

*Carroll v. Acme-Cleveland Corp.*,
    955 F.2d 1107 (7th Cir. 1992) ................................................8

*Cipa Mfg. Corp. v. Allied Golf Corp.*,
    1995 WL 337022 (N.D. Ill. June 1, 1995)................................................8

*Cont'l Bank, N.A. v. Meyer*,
    10 F.3d 1293 (7th Cir. 1993) ................................................9, 12

*Crest Hill Land Dev., LLC v. City of Joliet*,
    No. 03 C 3343, 2004 WL 1375385 (N.D. Ill. May 25, 2004), *aff'd*, 396 F.3d
    801 (7th Cir. 2005)................................................10

*Fort Howard Paper Co. v. Standard Havens*,
    901 F.2d 1373 (7th Cir. 1990) ................................................7, 9, 10

*Gonzalez-Koeneke v. West*,
    791 F.3d 801 (7th Cir. 2015) ................................................4, 7

*Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.*,
    362 F. Supp. 78 (N.D. Ill. 1973) ................................................11

*Harbor Ins. Co. v. Cont'l Bank Corp.*,
    922 F.2d 357 (7th Cir. 1990) ................................................4

*In re Discover Fin. Servs. Derivative Litig.*,
    No. 12 C 6436, 2016 WL 1056654 (N.D. Ill. Mar. 17, 2016) (Alonso, J.) ................7

ii

*Perrian v. O'Grady*,
    958 F.2d 192 (7th Cir. 1992) ............................................................................10

*THK America, Inc. v. NSK, Ltd.*,
    157 F.R.D. 660 (N.D. Ill. 1994).........................................................................9

*Urban v. United States*,
    392 F. Supp. 2d 1018 (N.D. Ill. 2005) ...............................................................4

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971)...........................................................................................9

**Rules**

FED. R. CIV. P. 13(a)................................................................................................4, 5, 12

FED R. CIV. P. 13(e)......................................................................................................5

FED R. CIV P. 15..........................................................................................................7

**INTRODUCTION**

The pleadings are joined, discovery is closed, and pending cross-motions for summary judgment soon will resolve the central legal issue that divides the parties: "whether Union Pacific does or does not have common-carrier obligations to provide commuter passenger service" on its Chicago-area lines. ECF 62 at 4. Metra was required to file its compulsory Counterclaim with its Answer, but failed to do so and the claim is waived. Nothing occurred between September 10, 2020, when Metra filed its Answer stating no counterclaim, and October 12, 2020, when Metra requested leave to late-file its proposed Counterclaim, to give rise to any new claims that would be properly before this Court. On the contrary, Metra's proposed Counterclaim revolves almost entirely around four historical grant agreements dating from 1978 to 2017, which Metra admittedly was aware of and believed were relevant to it claims and defenses at the time it filed its Answer. In any event, Metra's Counterclaim in the end merely repackages merits issues the Court already is poised to resolve on the pending summary judgment motions. To start the case all over again now for these restated claims would waste judicial resources and prejudice Union Pacific's and the public's interest in a timely and efficient resolution of this dispute. The Court should deny Metra's motion to file its Counterclaim.

**BACKGROUND**

Union Pacific filed its Complaint for Declaratory Relief on December 5, 2019. ECF 1. The Complaint followed extensive negotiations, during which the parties were unable to agree on the terms of a new agreement to replace the existing Purchase of Service Agreement ("PSA") under which Union Pacific operates Metra's commuter passenger trains on three Chicago-area rail lines. ECF 1, ¶ 4. The PSA currently is set to expire on December 31, 2020. ECF 77-9.

Union Pacific's Complaint seeks to resolve the legal issue that has stalled those negotiations: whether, if the PSA were to expire, Union Pacific would be subject to a "common

carrier" legal obligation that would compel Union Pacific to continue operating the commuter service. ECF 1, ¶¶ 27-34; *see* ECF 62 at 4. The Complaint asks for a declaration that no such common carrier obligation exists under federal or Illinois state law. ECF 1, ¶¶ 27-34.

On March 3, 2020, Metra moved to dismiss or stay this case based on the doctrine of primary jurisdiction pending completion of parallel proceedings before the federal Surface Transportation Board (STB). ECF 26. The Court set a schedule for briefing on Metra's motion and for all discovery to be completed by June 5, 2020. ECF 29. The discovery cutoff later was extended to August 21, 2020. ECF 41.

Metra served its Responses to Mandatory Initial Discovery (the "MIDP") on June 17, 2020. ECF 49; *see* Ex. A. In response to Item 3, which required Metra to list the documents that may be relevant to any party's claims or defenses, Metra answered, "The contracts between Metra or RTA on the one hand, and Union Pacific and its predecessors on the other hand. Metra will produce copies of the contracts." Ex. A at 1. In response to Item 4, which required Metra to state the facts relevant to, and the legal theories supporting, each of Metra's claims or defenses, Metra said nothing about a counterclaim. Ex. A at 1-2.

On June 21, 2020, Metra asked the STB for a declaration that Union Pacific has a common carrier legal obligation to provide commuter passenger service on the three lines. ECF 55-1; *see* ECF 67 at 2. Metra's request to the STB appeared to be in response to a June 30, 2020 letter from Union Pacific stating that Union Pacific intended to cease providing certain services, including legal services, by August 31, 2020. ECF 67 at 2 (citing ECF 56-1). On August 5, 2020, the STB held Metra's proceeding in abeyance based on this Court's concurrent jurisdiction to address the same common carrier question. ECF 67 at 2 (citing ECF 59-1 at 3).[1]

---

[1] The STB later dismissed the agency proceeding on September 24, 2020. ECF 66-1.

On August 14, 2020, the parties filed a joint status report. ECF 60. The parties reported they had not conducted any written discovery other than MIDP disclosures and had not noticed or taken any depositions. ECF 60 at 1. The parties agreed fact discovery should close as scheduled on August 21, 2020 and that no expert discovery was required. ECF 60 at 1; *see* ECF 61. Metra said nothing in the status report about a counterclaim.

On August 27, 2020, this Court denied Metra's Motion to Dismiss or Stay based on Primary Jurisdiction. ECF 62. On September 8, 2020, the Court held a telephonic status hearing. ECF 65. By agreement of the parties and this Court's minute order (ECF 65), summary judgment motions were due on October 16, 2020 with briefing to be completed on November 6, 2020.[2] Metra said nothing during the status hearing about a counterclaim. Metra filed its Answer on September 10, 2020, stating no affirmative defenses or counterclaim. ECF 64.

On October 12, 2020, Metra filed its Motion for Leave to File Counterclaim. ECF 67. Metra's proposed Counterclaim seeks declarations as to: Union Pacific's alleged federal common carrier obligation; whether federal law preempts Illinois law; the nature and duration of certain services currently provided by Union Pacific to Metra under the PSA; and the effect of various historical contracts on Union Pacific's alleged obligations. ECF 67-1 at 16–18. The proposed Counterclaim attaches and relies on four historical grant agreements between Metra and Union Pacific or Union Pacific's corporate predecessor, the Chicago & North Western (CNW), which Metra admittedly was aware of before filing its Answer. ECF 67-2, 3, 4, 5; *see* Ex. A. The proposed Counterclaim seeks three forms of injunctive relief. ECF 67-1 at 18.

---

[2] At this time, both Union Pacific and Metra have cross-filed and responded to one another's summary judgment motions on the common carrier question presented in Union Pacific's Complaint. *See* ECF 77, 78, 84, 85, 89, 90, 91, 92.

**LEGAL STANDARD**

"'The decision to grant or deny a motion to file an amended pleading is a matter purely within the sound discretion of the district court." *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011) (brackets omitted). Although "as a general rule, a court 'should freely give leave when justice so requires,'" district courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (quoting Fed. R. Civ. P. 15(a)(2)).

**ARGUMENT**

Metra's proposed Counterclaim is an untimely compulsory counterclaim. *See* FED. R. CIV. P. 13(a). As the Seventh Circuit has put it: "[a] compulsory counterclaim is compulsory; unless set forth in the answer to the complaint it is waived." *Harbor Ins. Co. v. Cont'l Bank Corp.*, 922 F.2d 357, 360 (7th Cir. 1990).

**I.     Metra's Proposed Counterclaim Is Compulsory And Was Waived.**

Metra's Counterclaim is compulsory because it "arises out of the transaction or occurrence that is the subject matter of [Union Pacific's] complaint." *See* FED. R. CIV. P. 13(a)(1)(A). The Seventh Circuit applies a "logical relationship" test "to determine whether the 'transaction or occurrence' is the same for purposes of Rule 13(a)." *Burlington N. R. Co. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990). Under the "logical relationship" test, "transaction" and "occurrence" may incorporate a whole series of logically related occurrences. *Urban v. United States*, 392 F. Supp. 2d 1018, 1023 (N.D. Ill. 2005).

Here, Union Pacific's Complaint and Metra's proposed Counterclaim both pertain to Union Pacific's obligation to operate commuter rail service on its lines and in particular whether Union Pacific must continue to operate that service after the parties' PSA contract expires. Even

4

Metra's argument that the historical grant agreements impose obligations on Union Pacific to operate Metra's rail service following the PSA's expiration based on alleged common carrier or other statutory or regulatory obligations presents the same issue the parties have disputed since the inception of this case: "whether Union Pacific has any legal obligation to continue providing the services it currently provides." ECF 62 at 2. Metra failed to assert its compulsory Counterclaim at the time it filed its answer and as a result forfeited this claim. *See* FED. R. CIV. P. 13(a)(1) ("A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party…").

## II.      Metra's Counterclaim Was Mature When It Filed Its Answer.

Rule 13(e) states that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." FED. R. CIV. P. 13(e). Metra attempts to shoehorn its proposed Counterclaim into Rule 13(e) by relying on a September 23, 2020 letter sent by Union Pacific as part of the parties' contract negotiations. ECF 77-11.[3] That letter contains no new information—and certainly nothing related to the historical grant agreements—to give rise to Metra's Counterclaim.

Negotiations between Union Pacific and Metra regarding Union Pacific's planned exit from the business of operating Metra's commuter service have been ongoing since 2019. That planned exit provided the factual predicate for Union Pacific's Complaint filed last December. ECF 1, ¶ 4. The September 23 letter that Metra argues provides a "new" basis for its Counterclaim simply sets out the most recent iteration of Union Pacific's proposed schedule for "a prompt and efficient services transfer," which Union Pacific was advising only would take

---

[3] The September 23, 2020 letter is incorrectly identified by Metra in its Motion for Leave to File Counterclaim as dated September 14, 2020 (sic). ECF 67, ¶¶ 11, 15, 21.

place "*after* a ruling on the common carrier question, [and] *if* the District Court rules in Union Pacific's favor." ECF 77-11 at 3 (emphasis added). The September 23 letter also expressly related back to Union Pacific's earlier June 30, 2020 letter regarding the services transfer schedule, which Metra relied on as the basis for filing its parallel STB proceeding. Metra admits as much. ECF 67, ¶¶ 4 5, 11.

No material change occurred between September 10, 2020, when Metra filed its Answer, and September 23, 2020, when Union Pacific sent the letter "suspend[ing] the services transfer schedule outlined in the June 30, 2020 letter." *See* ECF 77-11; ECF 67, ¶ 11. On the contrary, the September 23 letter—which Union Pacific sent specifically in response to Metra's written request on September 11, 2020 (*see* ECF 77-10)—*delayed* the transfer schedule previously outlined in Union Pacific's June 30 letter and extended any such action at least 30 days beyond this Court's final decision on the common carrier issue. ECF 77-11. Notably, the September 23 letter is included in both parties' summary judgment papers filed with the Court related to the issues already pending in this case. ECF 77-11; ECF 92 at 10–12.

Metra asserts as additional "new" basis for its late-filed Counterclaim "the absence of any commitment from Union Pacific that its operation of the commuter service will continue at least through the exhaustion of any appeals." ECF 67, ¶ 15. However, whatever Union Pacific might or might not do "before even the expiration of the notice of appeal period, much less the disposition of an appeal" (ECF 67, ¶ 11) fails to provide Metra with grounds to file an untimely Counterclaim. Such contingencies—dependent on the Court's future ruling, which is unknown— have no bearing on the timeliness of Metra's Counterclaim. *See APC Filtration, Inc. v. Becker*, No. 07-CV-1462, 2009 WL 187912, at *1 (N.D. Ill. Jan. 26, 2009) (untimely assertion that was also "highly speculative" was "not a proper ground" for party's motion).

6

Metra similarly offers no reason to conclude that its proposed new claims based on the historical grant agreements dating from 1978 to 2017 somehow matured after it filed its answer on September 10, 2020. Those claims not only accrued before the answer date, they accrued at the time of the agreements' formation. Any argument otherwise "is premised upon a misunderstanding of contract law. A party's rights and duties under any contract . . . accrue at the time of the contract's formation rather than the date when one of the parties sues the other . . ." *Campania Mgmt. Co. v. Rooks, Pitts & Poust,* 290 F.3d 843, 851 (7th Cir. 2002).

## III. The Court Should Deny Leave To Amend.

Because Metra failed to assert its Counterclaim in its original Answer, and because the Counterclaim had matured prior to that time, Metra only may file its Counterclaim with leave per Rule 15. Rule 15 states that leave to amend should be freely given when justice requires, but "FRCP 15(a) is not a license for carelessness or gamesmanship. Parties to litigation have an interest in speedy resolution of their disputes without undue expense." *Fort Howard Paper Co. v. Standard Havens*, 901 F.2d 1373, at 1379 (7th Cir. 1990); *see also Gonzalez-Koeneke v. West*, 791 F.3d 801, 809 (7th Cir. 2015) ("We will not reverse a district court's decision, however, when the court provides a reasonable explanation for why it denied the proposed amendment."). District courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *In re Discover Fin. Servs. Derivative Litig.*, No. 12 C 6436, 2016 WL 1056654, at *2 (N.D. Ill. Mar. 17, 2016) (Alonso, J.).

### A. Metra Has No Excuse For Its Undue Delay.

"District courts have discretion to deny a defendant's motion to file a counterclaim if the defendant fails to offer an explanation for not asserting the claim in the first instance or otherwise fails to explain its delay." *APC Filtration, Inc.*, 2009 WL 187912, at *3; *see also*

*Carroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1114 (7th Cir. 1992) (affirming denial of leave to file counterclaim where defendant failed to provide any legitimate excuse for its "inexcusable" delay in moving for leave to file counterclaim); *Cipa Mfg. Corp. v. Allied Golf Corp.*, 1995 WL 337022, at *3 (N.D. Ill. June 1, 1995) (denying leave to file amended answer, affirmative defenses and counterclaim, and noting that court has discretion to do so where defendant fails to offer justifiable explanation for not asserting the claim in the first instance, or fails to explain its delay). Moreover, it is within the discretion of the Court to disallow any counterclaims introduced after the date set for the close of discovery. *Campania Mgmt. Co.,* 290 F.3d at 851. "Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *Id.* (denying motion to file counterclaim where party failed to show good cause for its delay).

In its motion for leave, Metra "asserts that Union Pacific is required to continue operating service beyond the end of this year not only pursuant to its passenger common carrier obligation, but also pursuant to certain grant agreements entered into by Union Pacific and its predecessor, [CNW]." ECF 67, ¶ 14. Metra offers no valid reason why it did not or could not have raised this argument in a Counterclaim at the time it filed its Answer. Metra's own discovery disclosures demonstrate that Metra was aware of each of the agreements that form the basis for its proposed Counterclaim and believed they were "relevant to [its] claims or defenses" at the time Metra filed its Answer. *See* Ex. A at 1. Metra, however, did not assert a claim based on the grants agreements in its answer or even produce them in discovery, giving Union Pacific no opportunity to test Metra's new allegations about the intent of the parties dating back to 1978 and the legal effect of these agreements, if any, on this case.

In short, Metra "did not act diligently—that is, carefully, conscientiously—to ensure that the appropriate counterclaims were included with [its] answer." *See Am. Family Mut. Ins. Co. v. Kirby*, No. 2:15-CV-301-JVB-JEM, 2018 WL 345765, at *2 (N.D. Ind. Jan. 8, 2018) (denying leave to amend and file counterclaim where discovery had closed, moving party failed to include information providing reason for delay, and counterclaim was based on events that occurred before the lawsuit was even filed).

### B.     Allowing The Untimely Counterclaim Would Be Prejudicial.

Prejudice to the opposing party is the most important factor affecting whether the Court should grant leave to amend. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31 (1971) (trial court "required" to take potential prejudice into account in deciding Rule 15(a) motion). "It is wholly within a district court's discretion to deny an amendment to the pleadings for delay and prejudice to the opposing party." *Fort Howard Paper Co*, 901 F.2d at 1379. Prejudice means "undue difficulty in prosecuting [or defending] a lawsuit as a result of a change in tactics or theories on the part of the other party." *THK America, Inc. v. NSK, Ltd.*, 157 F.R.D. 660, 664 (N.D. Ill. 1994) (denying motion to amend pleadings to assert counterclaims where litigation was over two years old and fact discovery had closed).

Metra let the time for discovery run without filing a counterclaim. That in itself prejudiced Union Pacific. *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1298 (7th Cir. 1993) (counterclaim filed after close of discovery not permitted as prejudicial to plaintiff). Metra agreed to a summary judgment briefing schedule (ECF 65), and then changed tactics and moved for leave to file a counterclaim (*see* ECF 67). In its motion for leave, Metra stated that it did "not file the instant motion for purposes of delay" (ECF 67, ¶ 19), but then requested to extend the agreed summary judgment schedule the day before motions were due (ECF 71). Similarly, Metra asserted that "This Action is still in its early stages" (ECF 67, ¶19), despite that the fact the

parties had completed discovery, engaged in extensive briefing on jurisdictional issues in two forums and agreed that this case was properly postured for resolution as a matter of law (*see* ECF 65). Union Pacific would be prejudiced by the further procedural costs and delay that would necessarily result if Metra were allowed to effectively recommence this case now when discovery is closed and cross-motions for summary judgment will be fully briefed within days of this writing.

"Beyond prejudice to the parties, a trial court can deny amendment when concerned with the costs that protracted litigation places on the courts." *Fort Howard Paper Co.*, 901 F.2d at 1380; *Crest Hill Land Dev., LLC v. City of Joliet*, No. 03 C 3343, 2004 WL 1375385, at *3 (N.D. Ill. May 25, 2004), *aff'd*, 396 F.3d 801 (7th Cir. 2005) (same). Such delay impairs the public interest in the prompt resolution of legal disputes. *Id.*; *see also Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) ("The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party.") (quotations omitted). Here, Metra's proposed Counterclaim overlaps with and depends entirely on resolution of the straightforward legal issue already being briefed by the parties in their motions for summary judgment: would Union Pacific have a common carrier obligation to provide commuter service after the PSA expires? *See* ECF 62 at 4. If, as Union Pacific contends, it has no common carrier obligation after expiration of the PSA, then the Counterclaim fails in every respect, and there is no need to delay resolution and burden the Court with Metra's late-filed claims.

Metra's proposed Counterclaim seeks to raise the following issues:

> An actual case or controversy exists pursuant to Article III of the U.S. Constitution with respect to: (a) whether Union Pacific, under federal law, has a common carrier obligation to operate commuter service on any one or more of the UP Lines upon expiration of the PSA; (b) whether Illinois law regarding the operation, discontinuance or abandonment of commuter service on the UP

10

> Lines is federally preempted; (c) whether the Essential Services are
> "Public Transportation Services" within the meaning of the PSA;
> (d) whether the Essential Services are part of the federal passenger
> common carrier obligation; and (e) whether any or all of the grant
> agreements require Union Pacific to continue operating commuter
> service on the UP Lines during the useful life of the improvements
> under each of the grant agreements, respectively, while a purchase
> of service agreement is in effect, and, if a purchase of service
> agreement is not in effect, until such time as a regulatory agency of
> competent jurisdiction authorized the discontinuance of such
> commuter service."

ECF 67-1, ¶ 80. Each of these issues is either subsumed or mooted by the issues already before

the Court. Hence they are redundant and need not be revisited on Metra's proposed

Counterclaim. *See Green Bay Packaging, Inc. v. Hoganson & Assocs., Inc.*, 362 F. Supp. 78, 82

(N.D. Ill. 1973) (where plaintiff's complaint sought declaratory relief as to whether, under a

contract, plaintiff was liable to defendants for commissions on certain sales, counts of the

counterclaim that requested the court to determine the identical issue from defendants'

perspective were redundant and would be stricken).

Union Pacific takes the issues listed by Metra in turn:

- Issues (a), (b), and (d) will be decided for purposes of this case by the parties'

cross-motions for summary judgment already filed and being briefed. *See* ECF 78, 84.

- Issue (c) will be moot before it becomes ripe: Union Pacific has affirmed that it

would perform the services required under the PSA through its expiration on December 31, 2020

(ECF 77-11), and after December 31, there would be no PSA for the Court to consider.

Moreover, "Metra does not dispute that UP has assured Metra that UP will continue to provide

commuter services covered by the PSA for a specified period of time following this Court's

judgment on the common carrier question." ECF 92, ¶ 25.

11

- Even issue (e), Metra's request for a declaration that the historical grant agreements require Union Pacific to continue operating the commuter service until receiving regulatory authorization, ultimately depends on Metra's assertion that Union Pacific would have a legal obligation to do so, which will be decided here. *See* ECF 67-1, ¶¶ 26, 30, 36 & 44 (all quoting contract terms purportedly requiring Union Pacific to provide service in accord with regulatory, statutory, or common law provisions if and when the PSA expires).  Even if Metra's claim pertaining to the grant agreements were not redundant, Metra should have raised it in its Answer, making it late without excuse and therefore waived. *See* FED. R. CIV. P. 13(a).

Finally, the proposed Counterclaim seeks to interject new demands for mandatory injunctive relief (ECF 67 at 18), which would require proof of disputed facts regarding inadequacy of monetary relief, irreparable harm and the public interest. Metra, however, waited to bring its Counterclaim until after fact discovery closed, even though the Counterclaim is based on facts Metra already knew. *See Cont'l Bank, N.A.*, 10 F.3d at 1298 (upholding district court's denial of leave to amend where facts underlying counterclaim could have been pled at any time after the filing of the initial complaint). The Court should not allow Metra to waste public resources by starting this case all over again on the eve of its resolution.

## CONCLUSION

For these reasons, the Court should deny Metra's Motion for Leave to File Counterclaim.

Dated: November 3, 2020     Respectfully submitted,

               /s/ *Patricia Brown Holmes*
               Patricia Brown Holmes, Bar # 6194645
               Sarah E. Finch, Bar # 6312797
               RILEY SAFER HOLMES & CANCILA LLP
               70 W. Madison St., Ste. 2900
               Chicago, IL 60602
               Telephone: (312) 471-8745
               pholmes@rshc-law.com
               sfinch@rshc-law.com

               David E. Schoenfeld, Bar #6197020
               Erika A. Dirk, Bar #6329612
               SHOOK, HARDY & BACON L.L.P.
               111 S. Wacker Dr., 47th Floor
               Chicago, IL 60657
               Telephone: (312) 704-7700
               dschoenfeld@shb.com
               eadirk@shb.com

               Joe Rebein (*pro hac vice*)
               SHOOK, HARDY & BACON L.L.P.
               2555 Grand Blvd.
               Kansas City, MO 64108
               Telephone: (816) 474-6550
               jrebein@shb.com

               *Attorneys for Plaintiff*
               *Union Pacific Railroad Company*

13

<u>**CERTIFICATE OF SERVICE**</u>

I, undersigned counsel, certify that on November 3, 2020, I filed a copy of the foregoing

**UNION PACIFIC'S OPPOSITION TO METRA'S MOTION FOR LEAVE TO FILE**

**COUNTERCLAIM** electronically using the Court's CM/ECF system, which will generate

notice of this filing to all counsel of record.

_/s/   Patricia Brown Holmes_