**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:19-cv-07957 |
| v. ) | |
| ) | Honorable Jorge L. Alonso |
| THE REGIONAL TRANSPORTATION ) | |
| AUTHORITY AND ITS COMMUTER RAIL ) | Magistrate Judge Gabriel A. Fuentes |
| DIVISION, d/b/a METRA, ) | |
| ) | |
| Defendant. ) | |

**UNION PACIFIC'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Patricia Brown Holmes, Bar # 6194645
Sarah E. Finch, Bar # 6312797
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, IL 60602
Telephone: (312) 471-8745
pholmes@rshc-law.com
sfinch@rshc-law.com

David E. Schoenfeld, Bar # 6197020
Erika A. Dirk, Bar # 6329612
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., 47th Floor
Chicago, IL  60657
Telephone: (312) 704-7700
dschoenfeld@shb.com
eadirk@shb.com

Joe Rebein (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
Telephone: (816) 474-6550
jrebein@shb.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. Congress with ICCTA eliminated any common carrier obligation for Union Pacific to provide commuter passenger service on its lines after the PSA expires. ........... 2

II. Congress expressly preempted any common carrier obligation to provide commuter passenger service under state law. ................................................................... 6

CONCLUSION ............................................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*,
 622 F.3d 1094 (9th Cir. 2010) .................................................................................................9

*BNSF Ry. v. Cal. Dep't of Tax & Fee Admin.*,
 904 F.3d 775 (9th Cir. 2018) ...................................................................................................2

*Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*,
 450 U.S. 311 (1981)..................................................................................................................5

*City of Chi. v. United States*,
 396 U.S. 162 .............................................................................................................................2

*CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*,
 944 F. Supp. 1573 (N.D. Ga. 1996) .........................................................................................7

*Delaware v. STB*,
 859 F.3d 16 (D.C. Cir. 2017) ...................................................................................................8

*Elam v. Kan. City S. Ry.*,
 635 F.3d 796 (5th Cir. 2011) ...................................................................................................9

*Ezell v. Kan. City. S. Ry.*,
 866 F.3d 294 (5th Cir. 2017) ...................................................................................................2

*Fayus Enters.* v. *BNSF Ry.*,
 602 F.3d 444 (D.C. Cir. 2010) .................................................................................................9

*Friberg v. Kan. City S. Ry.*,
 267 F.3d 439 (5th Cir. 2001) ...................................................................................................9

*Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*,
 470 U.S. 451 (1985)..................................................................................................................5

*Nottke v. Norfolk S. Ry.*,
 318 F. Supp. 3d 1036 (N.D. Ohio 2018)...................................................................................9

*Southern Ry. Co. v. North Carolina*,
 376 U.S. 93 (1964)....................................................................................................................2

**Statutes**

49 U.S.C. § 1(18) ............................................................................................................................2

49 U.S.C. § 10501 ............................................................................................................... *passim*

49 U.S.C. § 10901 ......................................................................................................................8

49 U.S.C. § 10903 ................................................................................................................1, 2, 4

49 U.S.C. § 10906 ......................................................................................................................8

49 U.S.C. §§ 10908 and 10909 ................................................................................................ *passim*

49 U.S.C. § 11101 ......................................................................................................................4

ICC Termination Act of 1995 (ICCTA), 49 U.S.C. § 10101, et seq. .................................. *passim*

Illinois Commercial Transportation Law, 625 ILCS 5/18c-4207, 625 ILCS 5/18c-6301, 625 ILCS 5/18c-7101 ..................................................................................................10

Public Act 84-617, § 8-508 (1986) ...........................................................................................10

Public Utilities Act, 220 ILCS 5/8-508, 220 ILCS 5/3-105(a) .....................................................10

Rail Passenger Service Act of 1970, Pub. L. No. 91-518 § 401(a)(1), 84 Stat. 1327......................5

**Other Authorities**

11 Ill. Reg. 15034 (eff. Oct. 1, 1987)........................................................................................10

*Chi. Southshore & S. Bend R.R. – Pet. for Declaratory Order – Carrier Obligation*, 1989 WL 247064 (1989) .......................................................................................5

*DesertXpress Enters., LLC – Pet. for Declaratory Order*, 2010 WL 1822102 (STB 2010)........................................................................................................................4

H.R. Rep. No. 104-311 (1995)....................................................................................................6

H.R. Rep. No. 104-442 (1995)....................................................................................................3

S. Rep. No. 104-176 (1995) ........................................................................................................3

**INTRODUCTION**

Metra insists again and again that Union Pacific "must seek approval" from federal or state rail regulators in order to exit the business of operating commuter passenger service on its Chicago-area lines after expiration of the parties' Purchase of Service Agreement (PSA). *See* ECF 91 at 2, 8, 14. But neither federal law nor state law requires Union Pacific to seek such permission or even provides a framework for such a proceeding. Metra also insists that Union Pacific "inherited" a historical common carrier obligation to operate the commuter service from CNW, its corporate predecessor, and "nothing that has occurred at any time has altered that obligation." ECF 91 at 3. On the contrary, Congress passed the ICC Termination Act of 1995 (ICCTA)[1] after Union Pacific acquired CNW. With ICCTA, Congress specifically repealed the statutory authority for federal regulation of passenger train discontinuances and expressly preempted states from filling the gap with their own regulations. The material facts are undisputed (*compare* ECF 77 *with* ECF 92) and the single legal issue presented in this case is ripe for decision (ECF 62 at 4). This Court should grant summary judgment for Union Pacific on the common carrier question as a matter of law.

**ARGUMENT**

Metra argues that, as a result of Congress's repeal of former 49 U.S.C. §§ 10908 and 10909, Union Pacific has an obligation to operate commuter passenger service on its Chicago-area lines, which it cannot eliminate without obtaining STB authorization under 49 U.S.C. § 10903. ECF 91 at 8. Metra is wrong. If Metra were correct, Union Pacific could not exit the business of providing passenger service on its Chicago-area lines without also terminating all freight service on those lines. Union Pacific would have to terminate its freight service because

---

[1] Pub. L. No. 104–88, 109 Stat. 803.

§ 10903 applies only when a railroad is seeking to "*abandon* any part of its railroad lines," or to "discontinue the operation of *all rail transportation* over any part of its railroad lines." 49 U.S.C. § 10903(a)(1)(A), (B) (emphasis added). Metra also argues that if the STB does not regulate passenger train discontinuances after the passage of ICCTA, then such authority must have reverted to the states. Metra's argument misunderstands ICCTA's express preemption provision and has been repeatedly rejected by courts.

**I.      Congress with ICCTA eliminated any common carrier obligation for Union Pacific to provide commuter passenger service on its lines after the PSA expires.**

Section 10903 does not give the STB regulatory authority over a railroad's discontinuance of passenger service on a line also used for freight service. Section 10903 applies *only* when a railroad seeks to cease all operations on a line. *See* 49 U.S.C. § 10903(a)(1)(A), (B).

Before 1958, a railroad's discontinuance of only its passenger services on a line was not subject to federal regulation. Just like today, federal authority was required only when a railroad sought to cease all its operations on a line. *See* former 49 U.S.C. § 1(18). At the time, rail transportation of passengers was regulated under state law, and state regulators were often unwilling to authorize discontinuance of passenger trains. In 1958, Congress passed §§ 10908 and 10909, which granted federal regulators authority to approve discontinuances of passenger trains, to make it easier for railroads to discontinue passenger services. ECF 78 at 6–7; *City of Chi. v. United States*, 396 U.S. 162, 164–65 & 165 n.3 (1969); *Southern Ry. Co. v. North Carolina*, 376 U.S. 93, 101 (1964).

In passing ICCTA, Congress did not turn back the regulatory clock by increasing barriers to discontinuance of passenger trains. Instead, ICCTA "continued a decades-long trend" of reducing the burdens federal and state regulation impose on interstate freight railroads. *BNSF Ry. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 775, 760 (9th Cir. 2018); *see also Ezell v. Kan.*

2

*City. S. Ry.*, 866 F.3d 294, 298 (5th Cir. 2017) ("The purpose of the ICCTA is to build[] on the deregulatory policies that have promoted growth and stability in the surface transportation sector, and, specifically, to implement a [f]ederal scheme of minimal regulation for this intrinsically interstate form of transportation . . . .") (quotations omitted).

With ICCTA, Congress specifically sought to ensure "regulation of passenger transportation [was] generally eliminated." H.R. Rep. No. 104-442, at 167 (1995). It repealed §§ 10908 and 10909, which ended federal regulation of passenger train discontinuances. At the same time, it granted the STB expanded, exclusive jurisdiction over intrastate as well as interstate transportation, and it preempted state economic regulation of railroads to prevent state authorities from frustrating its deregulatory policies. *See* S. Rep. No. 104-176, at 6 (1995) ("Nothing in this bill should be construed to authorize States to regulate railroads in areas where Federal regulations have been repealed by this bill.").

In its brief, Metra incorrectly says both quotes come from the same Senate report. ECF 91 at 5–6. The first quote is from the House Conference Report. The Senate Report addressed a version of the bill that did not become law, as is clear from the language Metra quotes—*i.e.*, the STB's jurisdiction is *not* limited to freight transportation. However, the Senate Report's concern that states not step into any gaps created by the repeal of federal regulation *was* addressed in the final bill by granting the STB broad, exclusive jurisdiction and expressly preempting state law.

Metra focuses on a statement in the Senate Report that rail passenger transportation should be regulated (if at all) at the local or regional level. *See* ECF 91 at 6. The Senate Report's view is reflected in 49 U.S.C. § 10501(c)(2)(A), which provides that the STB has no general jurisdiction over "public transportation provided by a local government authority"—leaving states free to regulate transportation provided by or on behalf of transit authorities, such as

3

Metra. *See* ECF 89 at 17 & n.12. That view is fully consistent with preemption of state laws that purport to regulate transportation provided by interstate freight railroads—which the Senate Report strongly endorsed.

Metra spends much of the rest of its opposition knocking down strawmen. Contrary to Metra's incorrect claim, Union Pacific never suggested that Congress eliminated the STB's jurisdiction over passenger rail. ECF 91 at 4. Union Pacific's position is that Congress *expanded* the STB's jurisdiction over passenger rail and made that jurisdiction *exclusive* to prevent states from interfering with its deregulatory efforts. *See also* ECF 78 at 13–14.

Similarly, Union Pacific never suggested that Congress entirely eliminated STB regulation of passenger service. ECF 91 at 5.[2] In *DesertXpress*, the decision on which Metra primarily relies, the STB recognized that by "repeal[ing] the statutory sections regulating passenger train discontinuance," Congress made "a significant reduction in . . . the regulation of passenger transportation." *DesertXpress Enters., LLC – Pet. for Declaratory Order*, 2010 WL 1822102, at *10 (STB 2010). The STB plainly understood repeal of §§ 10908 and 10909 eliminated regulation of passenger train discontinuances; it did not leave railroads unable to discontinue passenger trains without discontinuing all service under § 10903. Union Pacific previously explained why the *Great Canadian* case does not contradict the STB's discussion of passenger train discontinuances in *DesertXpress*. *See* ECF 89 at 14–15.

---

[2] Contrary to Metra's incorrect claim, Union Pacific does not contend that Congress impliedly repealed any statute. ECF 91 at 4–5. Metra is apparently referring to 49 U.S.C. § 11101, which places certain obligations on railroads as long as they are providing common carrier passenger service. *See* ECF 84 at 18. But § 11101 does not independently obligate railroads to provide common carrier service when Congress has given them unrestricted permission to exit the business, as it did in ICCTA. *See* ECF 89 at 14 n.9.

4

Metra also incorrectly claims that several decisions Union Pacific cited in its summary judgment memorandum support Metra's position that STB permission is still needed to discontinue passenger trains. *See* ECF 91 at 6–8. *Chicago Southshore* says nothing about that issue. The case was decided before Congress passed ICCTA. And it confirms that a railroad can have a common carrier obligation to provide freight service but not passenger service on a line. *See Chi. Southshore & S. Bend R.R. – Pet. for Declaratory Order – Carrier Obligation*, 1989 WL 247064, at *3 (1989). Metra also points to two Supreme Court cases for the general proposition that a railroad's common carrier obligations continue until the railroad is permitted to discontinue the service. Again, however, neither case says the permission must come from the STB, which did not exist at the time the cases were decided. *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry.*, 470 U.S. 451, 455 n.7 (1985); *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 320 (1981). Here, *Congress* granted railroads unrestricted permission to discontinue common carrier passenger service by passing ICCTA.[3]

Finally, Metra argues about the nature of CNW's historical common carrier requirements and whether Union Pacific assumed those obligations when Union Pacific acquired CNW. *See* ECF 91 at 7–8. Union Pacific has addressed those arguments before. *See* ECF 78 at 10–11; ECF 89 at 12–15. The simple answer is that CNW's and Union Pacific's pre-ICCTA common carrier legal obligations are not relevant to the issue in this case: ICCTA eliminated federal regulation of passenger service discontinuances and preempted any state law purporting to regulate transportation provided by interstate railroads.

---

[3] Similarly, when Congress granted railroads permission to exit intercity rail passenger service, railroads did not need additional authority from regulators. *See* Rail Passenger Service Act of 1970, Pub. L. No. 91-518 § 401(a)(1), 84 Stat. 1327.

## II. Congress expressly preempted any common carrier obligation to provide commuter passenger service under state law.

Metra spends much of its opposition arguing that the STB has jurisdiction and authority over Union Pacific's planned discontinuance of operating Metra's commuter passenger service. ECF 91 at 3–9. Metra acknowledges that railroads "enjoy the benefit of broad preemption that frees them from burdensome and potentially inconsistent state-based regulations implicating interstate railroad transportation." ECF 91 at 8. Metra tries to hedge its bet, however. It says preemption would not apply *if* the STB lacks authority to regulate Union Pacific's planned discontinuance, in which case Illinois law would fill the "gap." ECF 91 at 10–14.

Metra's argument is one that courts have repeatedly and consistently rejected. Under ICCTA, where the STB has jurisdiction over rail transportation, the absence of a federal remedy does not allow states to fill the regulatory gap. Stated differently, the STB has broad *jurisdiction* over rail transportation, but it does not have *authority* to regulate all the operations within its jurisdiction. That is the point of *deregulation*. *See* H.R. Rep. No. 104-311, at 96 (1995) ("Although states retain the police powers reserved by the Constitution, the Federal scheme of economic regulation and deregulation is intended to address and encompass all such regulation and to be completely exclusive.").

In passing ICCTA, Congress's objective was to continue a decades-long trend of deregulating the rail industry. *See* ECF 89 at 13. Congress specifically intended to prevent states from frustrating its objective by regulating in areas where federal regulation had been repealed. In repealing §§ 10908 and 10909, Congress prevented states from regulating passenger train discontinuances by: (1) expanding the STB's *jurisdiction* over passenger service to include intrastate service, *see* ECF 78 at 13–14; (2) making the STB's jurisdiction "*exclusive*," 49 U.S.C. § 10501(b); and (3) expressly *preempting* state economic regulation of railroads, *see id*. "By

6

preempting state regulation of railroad operations, and granting exclusive jurisdiction over the regulation of almost all aspects of railroad operations to the [STB], Congress remove[d] the ability of states to frustrate its policy of deregulating and reviving the railroad industry." *CSX Transp., Inc. v. Ga. Pub. Serv. Comm'n*, 944 F. Supp. 1573, 1583 (N.D. Ga. 1996).

Metra's incorrect argument about a remedial gap is not new. It is the same as the argument rejected shortly after the passage of ICCTA in *CSX Transportation, Inc. v. Georgia Public Service Commission*. In that case, the Georgia Public Service Commission claimed authority to regulate railroad agency closings in Georgia.[4] Similar to Metra's argument here, the Georgia Commission argued that ICCTA "does not preempt state regulation of railroad agency closings because the Act provides no federal remedy for railroad agency closings." 944 F. Supp. at 1581. The court rejected the Commission's argument as "reflect[ing] a misunderstanding not only of the plain language of section 10501(b)(2), but also of the ICC Termination Act generally." *Id.* The court explained:

> The most natural reading of section 10501(b)(2) is that the federal remedies provided by the ICC Termination Act are *the only remedies available as to the regulation of rail transportation*, and that the federal remedies are exclusive of state remedies except where the ICC Act has expressly provided otherwise.

*Id.* (emphasis added). Like Metra, the Georgia Commission also argued that "Congress's specificity in the same code section as to its intent to grant the STB exclusive jurisdiction over intrastate spur and side tracks" was "evidence that Congress did not intend to preempt state regulatory authority" over matters not expressly specified. *Id.* at 1582; *see also* ECF 78 at 16–17. The court explained why that argument was "unconvincing" and incorrect. Congress's

---

[4] Railroad agencies "are typically owned in depots or other buildings owned by the servicing railroad," and they "are staffed by railroad employees who serve customers in the receipt or shipment of goods in interstate commerce." *Id.* at 1582.

"specificity as to intrastate spur and side tracks" was "understandable" in light of the history of regulation of intrastate spur and side tracks but was not intended to limit the scope of ICCTA preemption:

> Intrastate spur and side tracks were explicitly excluded from federal jurisdiction under the ICC Termination Act's predecessor, the Staggers Rail Act. Given states' exclusive jurisdiction over spur and side tracks under the Staggers Rail Act, it is understandable that Congress proceeded with extreme clarity in making federal jurisdiction over intrastate tracks exclusive in the ICC Termination Act. Thus, Congress's specificity as to intrastate tracks does not detract from its use of widely inclusive terms such as 'transportation by rail carriers' in the ICC Termination Act's preemption clause and statement of the STB's exclusive jurisdiction.

*Id.* at 1582–83.

Metra also refers to Congress's specificity in § 10906, which states that the STB has no authority under chapter 109 of Title 49 over certain activities in connection with spur, industrial, team, switching, or side tracks. ECF 91 at 12. Section 10906's specificity also was understandable. The activities at issue—*e.g.*, the construction of a spur—otherwise would require STB authority under provisions in chapter 109, which regulate, among other things, construction of rail lines. *See* 49 U.S.C. § 10901(a). Thus, the STB not only would have jurisdiction, but also authority to regulate the activities, without § 10906's express exception. By contrast, after repeal of §§ 10908 and 10909, passenger train discontinuances were not regulated under chapter 109 or any other provision of Title 49. Congress had no reason to specifically except regulation of passenger train discontinuances from the STB's regulatory authority.

In the years since *Georgia Public Service Commission*, courts repeatedly and consistently have agreed that ICCTA preemption applies even though a remedy might not exist under ICCTA for all instances in which state law is preempted. *See, e.g.*, *Delaware v. STB*, 859 F.3d 16, 21 (D.C. Cir. 2017) (ICCTA preempts state bill prohibiting the nonessential idling of locomotives at

8

nighttime); *Elam v. Kan. City S. Ry.*, 635 F.3d 796, 807 (5th Cir. 2011) (ICCTA preempts state anti-blocking statute and negligence per se claims based solely on the statute); *Ass'n of Am. R.Rs. v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098 (9th Cir. 2010) (ICCTA preempts local rules requiring railroads to reduce emissions and provide specific reports on emissions); *Friberg v. Kan. City S. Ry.*, 267 F.3d 439, 444 (5th Cir. 2001) (ICCTA preempts negligence claims where railroad liability would arise "from a railroad's economic decision such as those pertaining to train length, speed, or scheduling"); *Nottke v. Norfolk S. Ry.*, 318 F. Supp. 3d 1036, 1039 (N.D. Ohio 2018) (ICCTA preempts nuisance claims arising from rail operations). Congress's deregulatory efforts in ICCTA were "not, as [Metra] would have [this Court] believe, an invitation to states to fill the regulatory void created by federal deregulation." *Fayus Enters.* v. *BNSF Ry.*, 602 F.3d 444, 450 (D.C. Cir. 2010).

Metra also confuses the concepts of *jurisdiction* and *regulatory authority* when it discusses local government commuter service and solid waste rail transfer facilities. ECF 91 at 12. Congress generally excluded public transportation provided by a local government authority (such as the commuter service Metra operates) and solid waste rail transfer facilities owned or operated by a rail carrier from STB "jurisdiction." 49 U.S.C. § 10501(c)(2). Those exclusions mean that other federal or state law governs those services and facilities. By contrast, when transportation by a rail carrier falls within the STB's *jurisdiction*, other law is expressly preempted, even though the STB may lack *regulatory authority* over railroad decisions about operating that transportation.

Finally, Metra is simply wrong when it claims the Illinois Commerce Commission has authority under state law to regulate Union Pacific's discontinuance of passenger service. *See*

9

ECF 91 at 13–14.[5] As Union Pacific previously explained, Illinois law does not authorize the Illinois Commission to regulate passenger train discontinuances. ECF 89 at 18–19. Decades ago, the Illinois Commission had authority to regulate abandonment and discontinuance of service by any "public utility," Public Act 84-617, § 8-508 (eff. Jan. 1, 1986), including railroads, *see id.* § 12-101. But it no longer has such authority over railroads. It can regulate discontinuances of service by certain "public utilities," *see* 220 ILCS 5/8-508, but the term "public utilities" no longer includes railroads, *see* 220 ILCS 5/3-105(a). The Illinois Commission also can regulate discontinuances of service by household goods carriers, *see* 625 ILCS 5/18c-4207, and motor common carriers of passengers, *see* 625 ILCS 5/18c-6301, but it has no comparable authority over rail carriers. Its regulations governing discontinuance of passenger trains, formerly codified in part 1540 of Title 92, were repealed in 1987. *See* 11 Ill. Reg. 15034 (eff. Oct. 1, 1987).[6] Even if Illinois law purported to give the Illinois Commission authority to regulate passenger train discontinuances, state law acknowledges the provisions regulating rail carriers would not apply where, as here, they are preempted by federal law. *See* 625 ILCS 5/18c-7101.

## CONCLUSION

For these reasons, the Court should grant Union Pacific's motion for summary judgment and declare that Union Pacific has no common carrier legal obligation to provide commuter passenger service on its lines after expiration of the PSA between Metra and Union Pacific.

---

[5] Metra appears to suggest the STB might not have jurisdiction over common carrier passenger service provided by Union Pacific in the Chicago area to the extent the service could be characterized as "wholly intrastate." ECF 91 at 12–13. But the UP North Line operates between Illinois and Wisconsin. ECF 85, ¶ 5. Union Pacific previously explained in any case why even intrastate passenger service provided by an interstate freight railroad constitutes transportation between "a State and a place in the same or another State as part of the interstate rail network" within the STB's jurisdiction pursuant to 49 U.S.C. § 10501(a)(2)(A). *See* ECF 78 at 17; *see also* ECF 89 at 18 n.13. Metra offers no response.

[6] *See* https://www.ilga.gov/commission/jcar/admincode/092/09201540sections.html.

Dated: November 6, 2020  Respectfully submitted,

/s/ *Patricia Brown Holmes*
Patricia Brown Holmes, Bar # 6194645
Sarah E. Finch, Bar # 6312797
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Ste. 2900
Chicago, IL 60602
Telephone: (312) 471-8745
pholmes@rshc-law.com
sfinch@rshc-law.com

David E. Schoenfeld, Bar #6197020
Erika A. Dirk, Bar #6329612
SHOOK, HARDY & BACON L.L.P.
111 S. Wacker Dr., 47th Floor
Chicago, IL  60657
Telephone: (312) 704-7700
dschoenfeld@shb.com
eadirk@shb.com

Joe Rebein (*pro hac vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO  64108
Telephone: (816) 474-6550
jrebein@shb.com

*Attorneys for Plaintiff*
*Union Pacific Railroad Company*

**CERTIFICATE OF SERVICE**

      I, undersigned counsel, certify that on November 6, 2020, I filed a copy of the foregoing **PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

                                                                       /s/  *Patricia Brown Holmes*